UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| SPENCER NEAL, | ) | CASE NO.: _____ |
| | ) | |
| & | ) | |
| | ) | JUDGE: _____ |
| VIVIAN OEFFNER, | ) | |
| | ) | |
| (Individually and in Their Representative | ) | |
| Capacities) | ) | **CLASS ACTION COMPLAINT FOR** |
| | ) | **INJUNCTIVE RELIEF AND DAMAGES** |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **1ST CAUSE OF ACTION:** For Denial of Access by |
| | ) | a Public Accommodation in Violation of the |
| MARC GLASSMAN, INC., | ) | Americans with Disability Act of 1990 |
| d/b/a Marc's Discount Drug Store, | ) | ("Title III" and "ADA", 42 U.S.C. §§ 12181, |
| | ) | *et seq.*, 28 C.F.R. § 35.133(a) and |
| & | ) | 28 C.F.R. § 36.211(a) |
| | ) | |
| EDISON PARK, LTD, | ) | **2ND CAUSE OF ACTION:** For Denial of Access by |
| | ) | a Public Accommodation in Violation of Ohio |
| & | ) | Revised Code § 4112.02, *et seq.* |
| | ) | |
| LRC MAGIC INVESTORS, LTD, | ) | **3RD CAUSE OF ACTION:** For Violation of the |
| | ) | Ohio Consumer Sales Practices Act, R.C. § 1345, *et* |
| & | ) | *seq.* |
| | ) | |
| CHAPEL HILL ASSOCIATES LLC, | ) | |
| | ) | |
| & | ) | |
| | ) | |
| FAIRLAWN STATION LLC, | ) | |
| | ) | |
| & | ) | |
| | ) | |
| KRAUS ALEXANDER CONSTRUCTION | ) | |
| CO., | ) | |
| | ) | |
| & | ) | |
| | ) | |
| SOUTH PLAZA ASSOCIATES LLC, | ) | |
| | ) | |
| & | ) | |
| | ) | |
| STOW DARROW LIMITED PARTNERSHIP, | ) | |

1

|                              |     |
|------------------------------|-----|
|                              | )   |
| &                            | )   |
|                              | )   |
| 2891 WATERLOO ROAD LLC,      | )   |
|                              | )   |
| &                            | )   |
|                              | )   |
| DOE BUSINESS ENTITIES 1-60,  | )   |
|                              | )   |
| Defendants.                  | )   |

Plaintiffs Spencer Neal (hereinafter "Neal") and Vivian Oeffner (hereinafter "Oeffner") (collectively "Plaintiffs") Complain of Defendants Marc Glassman, Inc., doing business as Marc's Discount Drug Store (hereinafter "Marc's"), Edison Park, LTD (hereinafter "Edison"), LRC Magic Investors, LTD. (hereinafter "Magic", Chapel Hill Associates LLC (hereinafter "Chapel Hill", Fairlawn Station LLC (hereinafter "Fairlawn Station", Kraus Alexander Construction Co. (hereinafter "Kraus", Stow Darrow Limited Partnership (hereinafter "Stow Darrow"), South Plaza Associates LLC (hereinafter "South Plaza"), 2891 Waterloo Road LLC (hereinafter "Waterloo") (collectively with Marc's, hereinafter "Named Defendants"), and the Doe Business Entities (collectively with Named Defendants, hereinafter "Defendants") and allege as follows:

**INTRODUCTION:**

1.      This is a civil rights action for discrimination against persons with physical disabilities, of which Plaintiffs are members, for failure to perform annual preventive maintenance on automatic doors that would ensure safe access as well as the failure to remove architectural barriers structural in nature that impede safe access at Defendants' properties, which are places of public accommodation, thereby discriminatorily denying Plaintiffs access to, the full and equal enjoyment of, opportunity to participate in, and benefit from, the goods, facilities, services, and accommodations thereof. Plaintiffs seek injunctive relief and damages pursuant to Title III of the Americans with Disability Act of 1990 ("ADA"), 42. U.S.C. §§

12181, *et seq.*; 28 C.F.R. § 35.133; 28 C.F.R. § 36.211; Ohio Revised Code § 4112.02, *et seq.*; and Ohio Administrative Code § 4101:1-11.

**JURISDICTION AND VENUE:**

2. **Jurisdiction**: This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 for violations of 42 U.S.C. §12101, et seq., 28 C.F.R. 35.133 and 28 C.F.R. § 36.211. Pursuant to pendant jurisdiction, attendant and related causes of action arising from the same nucleus of operative facts and similar transactions are also brought under parallel Ohio law, whose goals are closely tied with the ADA, including, but not limited to, violations of Ohio Revised Code § 4112.02, *et seq*. and Ohio Administrative Code § 4101:1-11.

3. **Venue**: Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is founded on the facts that the real properties which are the subject of this action are primarily located in this district and Plaintiffs' causes of action arose in this district.

**PARTIES:**

4. Plaintiffs reside in this district as "physically handicapped persons," "physically disabled persons" and "persons with physical disabilities." (Hereinafter the terms "physically disabled," "physically handicapped" and "person with physical disabilities" are used interchangeably because they have similar or identical common usage and legal meaning.) Specifically, Neal is a "person with physical disabilities," as defined by all applicable Ohio and United States laws, because he requires the use of a wheelchair to travel about in public. Similarly, Oeffner is a "person with physical disabilities," as defined by all applicable Ohio and United States laws, because she regularly requires the use of a walker to travel about in public. As a result, Plaintiffs are members of that portion of the public whose rights are protected by 42 U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133; 28 C.F.R. § 36.211; Ohio Revised Code § 4112.02, *et seq*. and Ohio Administrative Code § 4101:1-11.

3

5.      At all relevant times, Marc's, with its principal place of business being 5841 W 130th St. in Cleveland, Ohio, has operated approximately 60 retail store outlets, primarily in this district, that constitute public facilities subject to various federal and parallel state laws requiring full and equal access to public facilities pursuant to 42 U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133; 28 C.F.R. § 36.211; Ohio Revised Code § 4112.02, *et seq.*, Ohio Administrative Code § 4101:1-11 and all other legal requirements referred to in this complaint.

6.      At all relevant times, Edison has owned the real property located at 900 West Maple Street in Hartville, Ohio (hereinafter "Marc's Hartville"), which Edison agreed to lease to Marc's in order to operate a retail store constituting a public facility subject to various federal and parallel state laws requiring full and equal access to public facilities pursuant to 42 U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133; 28 C.F.R. § 36.211; Ohio Revised Code § 4112.02, *et seq.*, Ohio Administrative Code § 4101:1-11 and all other legal requirements referred to in this complaint.

7.      At all relevant times, Magic has owned the real property located at 241 Wooster Road North in Barberton, Ohio (hereinafter "Marc's Barberton"), which Magic agreed to lease to Marc's in order to operate a retail store constituting a public facility subject to various federal and parallel state laws requiring full and equal access to public facilities pursuant to 42 U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133; 28 C.F.R. § 36.211; Ohio Revised Code § 4112.02, *et seq.*, Ohio Administrative Code § 4101:1-11 and all other legal requirements referred to in this complaint.

8.      At all relevant times, Chapel Hill has owned the real property located at 470 Howe Avenue in Akron, Ohio (hereinafter "Marc's Chapel Hill"), which Chapel Hill agreed to lease to Marc's in order to operate a retail store constituting a public facility subject to various federal and parallel state laws requiring full and equal access to public facilities pursuant to 42

U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133; 28 C.F.R. § 36.211; Ohio Revised Code § 4112.02, *et seq.*, Ohio Administrative Code § 4101:1-11 and all other legal requirements referred to in this complaint.

9.      At all relevant times, Fairlawn Station has owned the real property located at 2753 West Market Street in Fairlawn, Ohio (hereinafter "Marc's Fairlawn"), which Fairlawn Station agreed to lease to Marc's in order to operate a retail store constituting a public facility subject to various federal and parallel state laws requiring full and equal access to public facilities pursuant to 42 U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133; 28 C.F.R. § 36.211; Ohio Revised Code § 4112.02, *et seq.*, Ohio Administrative Code § 4101:1-11 and all other legal requirements referred to in this complaint.

10.      At all relevant times, Kraus has owned the real property located at 2900 State Road in Cuyahoga Falls, Ohio (hereinafter "Marc's Cuyahoga Falls"), which Kraus  agreed to lease to Marc's in order to operate a retail store constituting a public facility subject to various federal and parallel state laws requiring full and equal access to public facilities pursuant to 42 U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133; 28 C.F.R. § 36.211; Ohio Revised Code § 4112.02, *et seq.*, Ohio Administrative Code § 4101:1-11 and all other legal requirements referred to in this complaint.

11.      At all relevant times, South Plaza has owned the real property located at 360 E. Waterloo Road #426 in Akron, Ohio (hereinafter "Marc's Waterloo"), which South Plaza agreed to lease to Marc's in order to operate a retail store constituting a public facility subject to various federal and parallel state laws requiring full and equal access to public facilities pursuant to 42 U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133; 28 C.F.R. § 36.211; Ohio Revised Code § 4112.02, *et seq.*, Ohio Administrative Code § 4101:1-11 and all other legal requirements referred to in this complaint.

12.     At all relevant times, Stow Darrow has owned the real property located at 3732 Darrow Road in Stow, Ohio (hereinafter "Marc's Stow"), which Stow Darrow  agreed to lease to Marc's in order to operate a retail store constituting a public facility subject to various federal and parallel state laws requiring full and equal access to public facilities pursuant to 42 U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133; 28 C.F.R. § 36.211; Ohio Revised Code § 4112.02, *et seq.*, Ohio Administrative Code § 4101:1-11 and all other legal requirements referred to in this complaint.

13.     At all relevant times, Waterloo has owned the real property located at 2891 East Waterloo Road in Akron, Ohio (hereinafter "Marc's Springfield"), which Waterloo agreed to lease to Marc's in order to operate a retail store constituting a public facility subject to various federal and parallel state laws requiring full and equal access to public facilities pursuant to 42 U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133; 28 C.F.R. § 36.211; Ohio Revised Code § 4112.02, *et seq.*, Ohio Administrative Code § 4101:1-11 and all other legal requirements referred to in this complaint.

14.     As lessee of the properties listed in paragraphs 6-13, Marc's operated each store as a public facility open to the general public for retail business, subject to 42 U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133; 28 C.F.R. § 36.211; Ohio Revised Code § 4112.02, *et seq.*, Ohio Administrative Code § 4101:1-11, and all other legal requirements referred to in this complaint.

**FACTUAL ALLEGATIONS:**

15.     At all times referred to herein and continuing to the present time, Defendants advertised, publicized and held out each Marc's store as being handicapped accessible and handicapped usable.

16.     On or about May 29, 2025, Neal became an invitee, guest, patron, or customer of the Marc's Hartville store, arriving for the purpose of shopping at the store. Upon his arrival,

6

during his patronizing of the public accommodation and upon his exit of the facility, Neal personally encountered the following inaccessible elements (by way of example and not exhaustive inventory) constituting architectural barriers which denied him the proper and legally required access to a public accommodation for persons with physical disabilities:

a.  In the parking lot, out of the seven parking spaces held out by Defendants as accessible, five of the spaces did not have access aisles. Additionally, two of the spaces were excessively far from the Marc's entrance. Here, these barriers prevented Neal from parking in the handclapped parking spaces; he requires an access aisle to enter and exit his vehicle safely and a short route to the store's entrance to limit his time spent traveling in a heavily used parking lot.

b.  In the parking lot, and throughout the accessible routes to the entrance to Marc's, there was severely cracked and broken concrete and pavement. Here, these barriers made it difficult for Neal to maneuver his wheelchair throughout the parking lot to the entrance, causing him to strain more than usual in order to travel.

c.  At the exterior of the store, near its entrance, portable shelves blocked the curb ramp. Here, this barrier prevented Neal from using the curb ramp to the sidewalk; he was forced to travel in the roadway to the main entrance rather than use the accessible route closest to his parking space.

d.  At the Marc's store's entrance and exit, the automatic doors open in such a way that limits the required clear width; the doors only open partially instead of fully. Additionally, the floor mats, which help to open the automatic doors, have a threshold which exceeds the maximum height. Here, these barriers prevented Neal from safely entering and exiting the Marc's store; he was forced to traverse over a threshold which, although beveled, was still too high. Additionally, due to the

automatic doors not opening properly, Neal was forced to stop abruptly so as to not collide with the doors.

e.  Inside the Marc's store, the counter selling lottery tickets and cigarettes was too high. Additionally, the credit card readers were too high for a person in a wheelchair to use. Here, these barriers prevented Neal from interacting with staff and purchasing goods sold by the Marc's store.

f.  Inside the Marc's store, the pharmacy counters were too high. Here, these barriers prevented Neal from interacting with staff and purchasing goods sold by the Marc's store.

g.  Inside the Marc's store's men's restroom, when entering the restroom, there lacked latch side clearance due to the placement of a free-standing shelving unit. Additionally, the sign for the men's restroom was located on the door instead of adjacent to the latch side of the door. The sinks in the restroom were not properly insulated, the mirror was too high, and both the hand sanitizer and hand blower were too high. Additionally, the handicapped stall's door was not self-closing, the toilet was too far from the side wall, both the side grab bar and the rear grab bar was improperly placed and/or sized, the toilet paper was installed improperly. Finally, when exiting the men's restroom, there lacked proper latch side clearance on the pull side. Here, these barriers made using the restroom incredibly difficult for Neal. From entering and exiting the restroom, to using the handicapped stall and the lavatory, Neal encountered numerous obstacles which made his use of the facility dangerous and which caused him injury.

h.  Inside the Marc's store, there exists goods which are on shelves or behind counters that are excessively high. The Marc's store provides no notice or other information

for its disabled guests on what to do if they cannot reach an item independently. Here, this barrier prevented Neal from obtaining desired goods which were too high for him to reach. As no Marc's staff were present, Neal was forced to abandon his effort to purchase the products he was shopping for.

17.     Similarly, Oeffner, who uses the Marc's Hartville store two to three times per week due to the store's proximity to her residence, encountered and experienced many of the above barriers to access during her visits to the store.

18.     On or about June 3, 2025, Neal became an invitee, guest, patron, or customer of the Marc's Barberton store, arriving for the purpose of shopping at the store. Upon his arrival, during his patronizing of the public accommodation and upon his exit of the facility, Neal personally encountered the following inaccessible elements (by way of example and not exhaustive inventory) constituting architectural barriers which denied him the proper and legally required access to a public accommodation for persons with physical disabilities:

a.  In the parking lot, the accessible parking spaces, access aisles, and accessible routes have excessive running and/or cross slopes. Here, these barriers made entering and exiting his vehicle difficult for Neal, as well as traveling to and from the Marc's store's entrance.

b.  In the parking lot, the accessible parking signs were not located correctly; some of the signs were placed in the access aisles. Additionally, there existed no signs which indicated that the accessible parking spaces were van accessible.

c.  At the exterior sidewalk leading to the Marc's store's entrance, portable shelving units containing plants and a garden hose narrowed the accessible route. Here, this barrier prevented Neal from using sidewalk to enter the store; he was forced to travel in the roadway to the main entrance rather than use the accessible route

closest to his parking space.

    d. Inside the Marc's store, the card readers at the check out station were excessively high. Here, these barriers made it difficult for Neal to pay for his goods without having to strain his body in doing so.

    e. Inside the Marc's store, there exists goods which are on shelves or behind counters that are excessively high. The Marc's store provides no notice or other information for its disabled guests on what to do if they cannot reach an item independently. Here, this barrier prevented Neal from obtaining desired goods which were too high for him to reach. As no Marc's staff were present, Neal was forced to abandon his effort to purchase the products he was shopping for.

19.     On or about September 12, 2025, Neal became an invitee, guest, patron, or customer of the Marc's Fairlawn store, arriving for the purpose of shopping at the store. Upon his arrival, during his patronizing of the public accommodation and upon his exit of the facility, Neal personally encountered the following inaccessible elements (by way of example and not exhaustive inventory) constituting architectural barriers which denied him the proper and legally required access to a public accommodation to persons with physical disabilities:

    a. In the parking lot, the accessible parking spaces, access aisles, and accessible routes have excessive running and/or cross slopes. Additionally, the accessible route to the entrance, which is stiped in yellow paint, contains a sewer drain, with grates, that is excessively sloped. Here, these barriers made entering and exiting his vehicle difficult for Neal, as well as traveling to and from the Marc's store's entrance, causing him to strain more than usual in order to travel.

    b. In the parking lot, there existed no signs which indicated that the accessible parking spaces were van accessible.

c.  At the exterior sidewalk leading to the Marc's store's entrance, shopping carts, as well as other goods, narrowed the accessible route. Here, this barrier prevented Neal from using sidewalk to travel to other sections of the shopping plaza; he was forced to travel in the roadway rather than use the accessible route.

d.  At the accessible route near the Marc's store's entrance, there was severely cracked and broken concrete and pavement. Here, this barriers made it difficult for Neal to maneuver his wheelchair onto the sidewalk and into the entrance.

e.  At the Marc's store's entrance and exit, the automatic doors open in such a way that limits the required clear width; the doors only open partially instead of fully. Additionally, the floor mats, which help to open the automatic doors, have a threshold which exceeds the maximum height. Here, these barriers prevented Neal from safely entering and exiting the Marc's store; he was forced to traverse over a threshold which, although beveled, was still too high. Additionally, due to the automatic doors not opening properly, Neal was forced to stop abruptly so as to not collide with the doors.

f.  Inside the Marc's store, the card readers at the checkout station were excessively high. Here, these barriers made it difficult for Neal to pay for his goods without having to strain his body in doing so.

g.  Inside the Marc's store, the counter selling lottery tickets and cigarettes was too high. Additionally, the credit card readers were too high for a person in a wheelchair to use. Here, these barriers prevented Neal from interacting with staff and purchasing goods sold by the Marc's store.

h.  Inside the Marc's store, there were various floor mats which were not securely attached to the floor. Here, these barriers prevented Neal from moving freely

11

throughout the store.

i. Inside the Marc's store, there exists goods which are on shelves or behind counters that are excessively high. The Marc's store provides no notice or other information for its disabled guests on what to do if they cannot reach an item independently. Here, this barrier prevented Neal from obtaining desired goods which were too high for him to reach. As no Marc's staff were present, Neal was forced to abandon his effort to purchase the products he was shopping for.

20. On or about September 12, 2025, Neal became an invitee, guest, patron, or customer of the Marc's Stow store, arriving for the purpose of shopping and to assess the facility's accommodations for disabled patrons. Upon his arrival, during his patronizing of the public accommodation and upon his exit of the facility, Neal personally encountered the following inaccessible elements (by way of example and not exhaustive inventory) constituting architectural barriers which denied him the proper and legally required access to a public accommodation to persons with physical disabilities:

a. In the parking lot, at the two western-most accessible parking spaces, the handicapped parking sign is seated in a cement block in the access aisle. At the end of that same access aisle, there exists a sewer grate, with excessive slopes. Here, these barriers made entering and exiting his vehicle difficult for Neal, as well as traveling to and from the Marc's store's entrance, causing him to strain more than usual in order to travel.

b. At the exterior sidewalk leading to the Marc's store's entrance, shopping carts narrowed the accessible route. Here, this barrier prevented Neal from using sidewalk to travel to the store's entrance; he was forced to travel in the roadway rather than use the accessible route.

12

c. In the parking lot, at the two accessible parking spaces in front of the store's entrance, there are no accessible parking signs indicating which spaces are accessible or van accessible.

d. At the Marc's store's entrance and exit, the automatic doors open in such a way that limits the required clear width; the doors only open partially instead of fully. Additionally, the floor mats, which help to open the automatic doors, have a threshold which exceeds the maximum height. Here, these barriers prevented Neal from safely entering and exiting the Marc's store; he was forced to traverse over a threshold which, although beveled, was still too high. Additionally, due to the automatic doors not opening properly, Neal was forced to stop abruptly so as to not collide with the doors.

e. Inside the Marc's store, there were various floor mats which were not securely attached to the floor. Here, these barriers prevented Neal from moving freely throughout the store.

f. Inside the Marc's store, the counter selling lottery tickets and cigarettes was too high. Additionally, the credit card readers were too high for a person in a wheelchair to use. Here, these barriers prevented Neal from interacting with staff and purchasing goods sold by the Marc's store.

g. Inside the Marc's store, the pharmacy counters were too high. Here, these barriers prevented Neal from interacting with staff and purchasing goods sold by the Marc's store.

h. At the Marc's store's men's restroom, the sign for the men's restroom was located on the door instead of adjacent to the latch side of the door. The sinks in the restroom were not properly insulated. Additionally, the handicapped stall's toilet

13

was too far from the side wall, the toilet's flush handle was located on the wrong side, and both the side grab bar and the rear grab bar was improperly placed and/or sized. Finally, when exiting the men's restroom, there lacked proper latch side clearance on the pull side. Here, these barriers made using the restroom incredibly difficult for Neal. From exiting the restroom, to using the handicapped stall and the lavatory, Neal encountered numerous obstacles which made his use of the facility dangerous and which caused him injury.

    i. Inside the Marc's store, the card readers at the checkout station were excessively high. Here, these barriers made it difficult for Neal to pay for his goods without having to strain his body in doing so.

    j. Inside the Marc's store, there exists goods which are on shelves or behind counters that are excessively high. The Marc's store provides no notice or other information for its disabled guests on what to do if they cannot reach an item independently. Here, this barrier prevented Neal from obtaining desired goods which were too high for him to reach. As no Marc's staff were present, Neal was forced to abandon his effort to purchase the products he was shopping for.

21.    On or about September 13, 2025, Neal became an invitee, guest, patron, or customer of Marc's Chapel Hill store, arriving for the purpose of shopping and to assess the facility's accommodations for disabled patrons to ensure his safe access for future patronage. Upon his arrival, during his patronizing of the public accommodation and upon his exit of the facility, Neal personally encountered the following inaccessible elements (by way of example and not exhaustive inventory) constituting architectural barriers which denied him the proper and legally required access to a public accommodation to persons with physical disabilities:

    a. At the Marc's store's entrance and exit, the automatic doors open in such a way that

limits the required clear width; the doors only open partially instead of fully. Additionally, the floor mats, which help to open the automatic doors, have a threshold which exceeds the maximum height. Here, these barriers prevented Neal from safely entering and exiting the Marc's store; he was forced to traverse over a threshold which, although beveled, was still too high. Additionally, due to the automatic doors not opening properly, Neal was forced to stop abruptly so as to not collide with the doors.

b. Inside the Marc's store, the counter selling lottery tickets and cigarettes was too high. Additionally, the credit card readers were too high for a person in a wheelchair to use. Here, these barriers prevented Neal from interacting with staff and purchasing goods sold by the Marc's store.

c. Inside the Marc's store, there were various floor mats which were not securely attached to the floor. Here, these barriers prevented Neal from moving freely throughout the store.

d. Inside the Marc's store, the card readers at the checkout station were excessively high. Here, these barriers made it difficult for Neal to pay for his goods without having to strain his body in doing so.

e. Inside the Marc's store, the pharmacy counters were too high. Here, had he visited this store when the pharmacy was open, these barriers would have prevented Neal from interacting with staff and purchasing goods sold by the Marc's store.

f. At the Marc's store's men's restroom, the sign for the men's restroom was located on the door instead of adjacent to the latch side of the door. Inside the restroom, there was a coat hanger which was installed too high. In addition, the lock was one which required tight pinching and turning of the hand and wrist. The clear floor

space to the hand sanitizer was obstructed by the trashcan, as was the hand blower. The toilet had no side or rear grab bars and the toilet paper was installed incorrectly. The sink was no accessible, in that it was not properly insulated and did not permit a person with a wheelchair to pull under the sink. Clear floor space to the hand soap was obstructed by the toilet and sink. Finally, when exiting the men's restroom, there lacked proper latch side clearance on the pull side. Here, these barriers made using the restroom incredibly difficult for Neal. From exiting the restroom, to using the handicapped stall and the lavatory, Neal encountered numerous obstacles which made his use of the facility dangerous and which caused him injury.

g. At the Marc's store, there existed Price Check scanning machines that were placed too high for a person using a wheelchair to use.

h. Inside the Marc's store, there exists goods which are on shelves or behind counters that are excessively high. The Marc's store provides no notice or other information for its disabled guests on what to do if they cannot reach an item independently. Here, this barrier prevented Neal from obtaining desired goods which were too high for him to reach. As no Marc's staff were present, Neal was forced to abandon his effort to purchase the products he was shopping for.

22.     On or about September 13, 2025, Neal became an invitee, guest, patron, or customer of the Marc's Cuyahoga Falls store, arriving for the purpose of shopping and to assess the facility's accommodations for disabled patrons to ensure his safe access for future patronage. Upon his arrival, during his patronizing of the public accommodation and upon his exit of the facility, Neal personally encountered the following inaccessible elements (by way of example and not exhaustive inventory) constituting architectural barriers which denied him the proper and

16

legally required access to a public accommodation to persons with physical disabilities:

    a. In the parking lot, there exists accessible parking spaces without proper access aisles. Additionally, the accessible parking spaces, access aisles, and accessible routes have excessive running and/or cross slopes. Here, these barriers made entering and exiting his vehicle difficult for Neal, as well as traveling to and from the Marc's store's entrance.

    b. At the Marc's store's entrance and exit, the automatic doors open in such a way that limits the required clear width; the doors only open partially instead of fully. Additionally, the floor mats, which help to open the automatic doors, have a threshold which exceeds the maximum height. Here, these barriers prevented Neal from safely entering and exiting the Marc's store; he was forced to traverse over a threshold which, although beveled, was still too high. Additionally, due to the automatic doors not opening properly, Neal was forced to stop abruptly so as to not collide with the doors.

    c. Leading to the store's entrance, there exists multiple curb ramps with excessive slopes that are on the accessible route from the handicapped parking spaces. Additionally, shopping carts  and other goods intrude on the clear floor space at the top of the curb ramp. Here, Neal had great difficulty maneuvering up and down these curb ramps.

    d. Inside the Marc's store, the counter selling lottery tickets and cigarettes was too high. Additionally, the credit card readers were too high for a person in a wheelchair to use. Here, these barriers prevented Neal from interacting with staff and purchasing goods sold by the Marc's store.

    e. At the Marc's store's men's restroom, the sign for the men's restroom was located

17

on the door instead of adjacent to the latch side of the door. Inside the restroom, the lavatories were not properly insulated and the restroom's mirror was too high off the ground. The accessible stall's toilet flush handle was on the wrong side, the rear and side grab bars were not positioned correctly and/or long enough, and there was a coat hanger located too high off the ground. In addition, the stall's lock was one which required tight pinching and turning of the hand and wrist. Here, these barriers made using the restroom incredibly difficult for Neal.

    f.  Inside the Marc's store, there exists goods which are on shelves or behind counters that are excessively high. The Marc's store provides no notice or other information for its disabled guests on what to do if they cannot reach an item independently. Here, this barrier prevented Neal from obtaining desired goods which were too high for him to reach. As no Marc's staff were present, Neal was forced to abandon his effort to purchase the products he was shopping for.

23.    On or about September 19, 2025, Oeffner became an invitee, guest, patron, or customer of Marc's Springfield store, arriving for the purpose of shopping and to assess the facility's accommodations for disabled patrons to ensure her safe access for future patronage. Upon her arrival, during her patronizing of the public accommodation and upon her exit of the facility, Oeffner personally encountered the following inaccessible elements (by way of example and not exhaustive inventory) constituting architectural barriers which denied her the proper and legally required access to a public accommodation to persons with physical disabilities:

    a.  In the parking lot, there exists accessible parking spaces, access aisles and accessible routes with excessive running and/or cross slopes. Here, these barriers made entering and exiting her vehicle difficult for Oeffner, as well as traveling to and from the Marc's store's entrance.

b.  Inside the Marc's store, the counter selling lottery tickets and cigarettes, as well as the credit card readers, were excessively high. Here, these barriers prevented Oeffner from interacting with staff and purchasing goods sold by the Marc's store.

c.  At the Marc's store's women's restroom, the sign for the women's restroom was located on the door instead of adjacent to the latch side of the door. Inside the restroom's handicapped stall, the rear and/or side grab bars, the toilet paper dispenser and the sanitary disposal box were not positioned correctly. Here, these barriers made using the restroom incredibly difficult for Oeffner.

d.  Inside the Marc's store, there exists goods which are on shelves or behind counters that are excessively high. The Marc's store provides no notice or other information for its disabled guests on what to do if they cannot reach an item independently. Here, this barrier prevented Oeffner from obtaining desired goods which were too high for her to reach. As no Marc's staff were present, Oeffner was forced to abandon her effort to purchase the products she was shopping for.

24.    Oeffner, who frequently uses the Marc's Springfield store due to the proximity of the store to her church, encountered and experienced many of the above barriers to access during her past visits to the store.

25.    On or about September 20, 2025, Neal became an invitee, guest, patron, or customer of the Marc's Springfield store, arriving for the purpose of shopping and to assess the facility's accommodations for disabled patrons to ensure his safe access for future patronage. Upon his arrival, during his patronizing of the public accommodation and upon his exit of the facility, Mr. Neal personally encountered the following inaccessible elements (by way of example and not exhaustive inventory) constituting architectural barriers which denied him the proper and legally required access to a public accommodation to persons with physical disabilities:

19

a. In the parking lot, there exists accessible parking spaces, access aisles and accessible routes with excessive running and/or cross slopes. Here, these barriers made entering and exiting his vehicle difficult for Neal, as well as traveling to and from the Marc's store's entrance.

b. Inside the Marc's store, the counter selling lottery tickets and cigarettes, as well as the credit card readers, were excessively high. Here, these barriers prevented Neal from interacting with staff and purchasing goods sold by the Marc's store.

g. At the Marc's store's men's restroom, the sign for the men's restroom was located on the door instead of adjacent to the latch side of the door. Inside the restroom, the lavatory was not properly insulated. Additionally, one using a wheelchair could not pull under the lavatory, as there lacked proper width and knee clearance. The paper towels were excessively high. The accessible stall's toilet flush handle was on the wrong side of the toilet and the rear and side grab bars were not positioned correctly and/or long enough. Here, these barriers made using the restroom incredibly difficult for Neal.

c. Inside the Marc's store, there exists goods which are on shelves or behind counters that are excessively high. The Marc's store provides no notice or other information for its disabled guests on what to do if they cannot reach an item independently. Here, this barrier prevented Neal from obtaining desired goods which were too high for him to reach. As no Marc's staff were present, Neal was forced to abandon his effort to purchase the products he was shopping for.

26.     On or about September 20, 2025, Neal became an invitee, guest, patron, or customer of the Marc's Waterloo store, arriving for the purpose of shopping and to assess the facility's accommodations for disabled patrons to ensure his safe access for future patronage.

20

Upon his arrival, during his patronizing of the public accommodation and upon his exit of the facility, Mr. Neal personally encountered the following inaccessible elements (by way of example and not exhaustive inventory) constituting architectural barriers which denied him the proper and legally required access to a public accommodation to persons with physical disabilities:

    a. At the accessible parking, various accessible stalls lacked proper access aisles or did not have an access aisle. Here, these barriers prevented Neal from parking in an accessible space which he is permitted to do.

    b. At the Marc's store's entrance and exit, the automatic doors open in such a way that limits the required clear width; the doors only open partially instead of fully. Additionally, the floor mats, which help to open the automatic doors, have a threshold which exceeds the maximum height. Here, these barriers prevented Neal from safely entering and exiting the Marc's store; he was forced to traverse over a threshold which, although beveled, was still too high. Additionally, due to the automatic doors not opening properly, Neal was forced to stop abruptly so as to not collide with the doors.

    c. Inside the Marc's store, the pharmacy counters were too high. Here, had he visited this store when the pharmacy was open, these barriers would have prevented Neal from interacting with staff and purchasing goods sold by the Marc's store.

    d. At the Marc's store's men's restroom, the sign for the men's restroom was located on the door instead of adjacent to the latch side of the door. Inside the restroom, the lavatories were not properly insulated. The accessible stall was not self-closing, the center of the toilet was too far from the side wall, the rear and side grab bars were not positioned correctly and/or long enough, and the toilet paper dispenser was not positioned correctly. Here, these barriers made using the

restroom incredibly difficult for Neal.

    e.  Inside the Marc's store, there exists goods which are on shelves or behind counters that are excessively high. The Marc's store provides no notice or other information for its disabled guests on what to do if they cannot reach an item independently. Here, this barrier prevented Neal from obtaining desired goods which were too high for him to reach. As no Marc's staff were present, Neal was forced to abandon his effort to purchase the products he was shopping for.

27.    Upon inspecting the properties listed in paragraphs 6-13, Neal discovered the named Defendants are failing to provide proper legal access to said properties. As a result of violating applicable federal and Ohio legal requirements, Defendants have infringed Neal's civil rights to full and equal access to said public accommodations, to his embarrassment and humiliation. (Plaintiffs reserve the right to amend this complaint in the future to name additional Marc's stores assessed by Neal to ensure his safe access for future patronage and to identify additional Named Defendants.)

28.    In addition to suing the Named Defendants individually for prospective injunctive relief and statutory damages, Neal seeks to represent certain Marc's patrons in a representative capacity, consisting of a uniform sub-class of all disabled persons who have patronized one or more of the public accommodations identified in paragraphs 6-13 at least once since September 22, 2021. Alternatively, Neal may ask the Court to divide the same Marc's patrons into five separate sub-classes—one for each store identified in paragraphs 6-13.)

29.    Neal also seeks to join with Oeffner in their representative capacities to represent a class consisting of all disabled persons who have patronized a Marc's store at least once between September 22, 2021 and the conclusion of this action in order to obtain a mandatory injunction requiring all Marc's stores to comply with ADA's mandate to perform preventive maintenance on automatic doors through annual certified AAADM inspections, and for statutory damages.

30.     On or about September 22, 2021, Oeffner was an invitee, guest, patron, or customer of Marc's Hartville store when she was struck violently by a malfunctioning automatic door while crossing the safety zone, causing her serious physical injuries. Upon retaining an expert in the mechanical operation of automatic doors, Oeffner learned that the malfunction would have likely been prevented if Defendants had performed industry-standard preventive maintenance. Prior to expiration of the applicable statute of limitations, Oeffner filed suit against Marc's only for premises liability in the Common Pleas Court of Stark County, Ohio.

31.     After reviewing Marc's responses to Plaintiff's request for admissions on or about September 21, 2023, Oeffner learned that Marc's has maintained a corporate-wide unwritten policy of refusing to perform industry-standard preventive maintenance on any automatic door throughout its network of stores in Northeast Ohio for decades. Oeffner sought to certify a class action under Rule 23 of the Ohio Rules of Civil Procedure, consisting of all persons who have patronized any Marc's store since September 22, 2021. Her objective was to obtain a mandatory injunction requiring Marc's to comply with Ohio's Building Code and related administrative rules by conducting annual AAADM certified inspections of its automatic doors in every store.

32.     Marc's was able to prevail in Oeffner's personal injury claim by asserting certain affirmative defenses applicable only to premises liability and persuading the state court that the administrative rule covering automatic doors merely ***recommends*** (rather than requires) annual certified inspections. Because Oeffner's claim for injunctive relief was dismissed by summary judgment, it was never certified for class treatment.

33.     The instant action differs materially from Oeffner's state action in that: (1) Oeffner relies primarily on the ADA, a federal law not applicable to a state law claim for premises liability; (2) ADA ***requires*** (not merely recommends) public accommodations to perform annual certified inspections on all automatic access doors; (3) even if Oeffner could have asserted an ADA claim in

23

state court, the prospect of just relief would be jeopardized because Ohio judges are unfamiliar with ADA's complex statutory scheme and may thus overlook the federal law's stronger compliance standard; (4) to assert her ADA claim, Oeffner must first prove she qualifies for protection; (5) as permitted by ADA's statutory scheme, Oeffner is also suing the corporate entity that owned the real property housing Marc's Hartville store at the time of her injury; (6) Oeffner joins with Neal in seeking to represent a narrower class in her representative capacity, consisting of all *disabled* persons who have patronized a Marc's store at least once between September 22, 2021 and the conclusion of this action; (7) Oeffner also seeks to represent a sub-class of all class members who have been injured by an automatic door in any Marc's store since September 21, 2023. These substantive and procedural distinctions provide sufficient grounds for defeating the affirmative defenses of issue and claim preclusion based on Oeffner's premises liability claim against Marc's Hartville store.

34. Plaintiffs are informed and believe that the Named Defendants' properties qualify as public accommodations, with each named Defendant serving as Marc's lessor, agent, ostensible agent, master, servant, employer, employee, representative, franchisor, franchisee, partner, associate, or in a similar capacity, and were at all relevant times acting and performing, or failing to act or perform, within the course and scope of his, her or its authority as lessor, agent, ostensible agent, master, servant, employer, employee, representative, franchiser, franchisee, partner, and associate, or in a similar capacity, and with Marc's authorization, consent, permission or ratification. Consequently, the named Defendants may be held directly responsible and/or jointly and severally liable for Marc's own acts and omissions by either directly causing the violations and damages complained of herein or approving and/or ratifying Marc's own acts and omissions, as herein described.

35. Specifically, the Named Defendants are directly or jointly and severally responsible for identifying and removing the architectural barriers in their real property identified herein, pursuant

to Code of Federal Regulations section 36.201(b), which states in pertinent part:

**§ 36.201**     **General**

(b) Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public
accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.

36.      The Named Defendants also share joint and several liability with Marc's for failing to perform annual preventive maintenance on the automatic doors providing egress and ingress to the stores leased to Marc's as public accommodations, pursuant to Code of Federal Regulations sections 36.21 and 35.133, which state in pertinent part:

**§ 36.211(a) (applicable after April 3, 2025)**

A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part.

**§ 35.133(a)  (applicable until April 3, 2025)**

A public entity shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities.

37.      Upon information and belief, approximately 52 additional unnamed stores operated by Marc's as lessee and owned by the Doe Business Entities in this district are also public facilities open to the general public for retail business and therefore subject to all applicable federal and Ohio laws. Plaintiffs do not know the true names of the Doe Business Entities, their business capacities, their ownership connection to the unidentified properties leased to Marc's, or their relative responsibilities in causing the access violations herein complained of.

38.      At all relevant times, Plaintiffs are also informed and believe that each Doe Business Entity has served (and continues to serve) as Marc's lessor, agent, ostensible agent, master, servant,

employer, employee, representative, franchisor, franchisee, partner, associate, or in a similar capacity, and were at all relevant times acting and performing, or failing to act or perform, within the course and scope of his, her or its authority as lessor, agent, ostensible agent, master, servant, employer, employee, representative, franchiser, franchisee, partner, and associate, or in a similar capacity, and with Marc's authorization, consent, permission or ratification. Consequently, the Doe Business Entities may be held directly responsible and/or jointly and severally liable for Marc's own acts and omissions by directly causing the violations complained of herein or approving and/or ratifying Marc's own acts and omissions, as herein described.

39.     Specifically, the Doe Business Entities share joint and several liability with Marc's and the Named Defendants for failing to perform annual preventive maintenance on the automatic doors providing egress and ingress to the stores leased to Marc's as public accommodations, pursuant to Code of Federal Regulations sections 36.201, 36.211 and 35.133, which state in pertinent part:

**§ 36.201        General**

> (b) Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.

**§ 36.211(a) (applicable after April 3, 2025)**

> (a) A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part.

**§ 35.133(a)  (applicable until April 3, 2025)**

> (a) A public entity shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities.

40.     Once the Doe Business Entities' corporate names, business addresses and locations of the real estate housing Marc's leased premises are obtained through Plaintiffs' reasonable diligence,

they will seek leave to amend this class action complaint to add the Doe Business Entities they were able to identify as Named Defendants and to serve all Defendants process of this pending litigation.

41.     At all times stated herein, the existence of architectural barriers at the Named Defendants' place of public accommodation evidenced "actual notice" of their intent not to comply with 42 U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133, 28 C.F.R. § 36.211, Ohio Revised Code § 4112.02, *et seq*. and Ohio Administrative Code §4101:1-11, either then, now or in the future.

42.     As a legal result of the Named Defendants' failure to act as a reasonable and prudent public accommodation by identifying, removing or creating architectural barriers, policies, practices and procedures that denied access to Plaintiffs and other persons with disabilities, Plaintiffs suffered damages as alleged herein.

43.     As a further legal result of the Named Defendants' actions and failure to act, and as a legal result of the failure to provide proper handicapped-accessible public facilities as set forth herein, Plaintiffs were denied their civil rights to full and equal access to public facilities. Plaintiffs suffered a loss of their civil rights and rights as a person with physical disabilities to full and equal access to public facilities, and further suffered from physical personal injury, shame, humiliation, embarrassment, anger, chagrin, disappointment and worry, expectedly and naturally associated with a person with physical disabilities being denied access, all to their damages as prayed hereinafter in an amount within this Court's jurisdiction.

44.     Upon information and belief, construction alterations conducted by the Named Defendants triggered access requirements under 42. U.S.C. §§ 12181 *et seq.*, 28 C.F.R. § 35.133, 28 C.F.R. § 36.211, Ohio Revised Code § 4112.02, *et seq*. and Ohio Administrative Code §4101:1-11.

45.     Plaintiffs seek injunctive relief requiring every Marc's store owned or operated by the Named Defendants to be made accessible to meet the requirements of both Ohio law and the Americans with Disabilities Act, whichever is more restrictive, so long as the Named Defendants

own, operate and/or lease said stores as public facilities. Plaintiffs also seek damages for violation of their civil rights, from the earliest date allowed under applicable laws until such date as the Named Defendants bring the stores into full compliance with the requirements of Ohio and federal law.

46.     Upon further information and belief, the Named Defendants have been negligent in their affirmative duty to identify the architectural barriers complained of herein and negligent in the removal of some or all of said barriers. Because of the Named Defendants' violations, Plaintiffs and other persons with physical disabilities are unable to use public facilities such as those owned and operated by the Named Defendants on a "full and equal" basis unless such facility is brought into compliance with the provisions of the Americans with Disabilities Act and other accessibility laws as pleaded herein. Plaintiffs therefore seek an order from this Court compelling the Named Defendants to make every Marc's store in this district accessible to persons with disabilities.

47.     Upon further information and belief, the Named Defendants have undertaken to modify and alter Marc's stores without complying with accessibility requirements. The acts and omissions of the Named Defendants in failing to provide the required accessible public facilities at the time of Plaintiffs' visits and injuries indicate actual and implied malice towards Plaintiffs, and despicable conduct carried out by the Named Defendants with a willful and conscious disregard for the rights and safety of Plaintiffs and other similarly situated persons, thereby justifying punitive damages pursuant to Ohio Revised Code § 2315.21, in amounts sufficient to make a more profound example of the Named Defendants to other operators of other establishment and other public facilities, and to punish the Named Defendants and to carry out the purposes of § 2315.21.

48.     Plaintiffs are also informed and believe and therefore allege that the Named Defendants caused the subject properties to be constructed, altered and/or maintained in such a manner that persons with physical disabilities were denied full and equal access to, within and throughout said public facilities. Further, upon information and belief, the Named Defendants

28

continue to maintain and operate said public facilities in such conditions up to the present time, despite actual and constructive notice to the Named Defendants that the configuration of the establishment and/or said buildings are in violation of the civil rights of persons with physical disabilities such as Plaintiffs and the disability community. Such construction, modification, ownership, operation, maintenance and practices of such public facilities are in violation of law as stated in 42. U.S.C. §§ 12181 *et seq.* and elsewhere in the laws of Ohio.

49.     Upon further information and belief, the subject public facilities denied full and equal access to Plaintiffs and other persons with physical disabilities in other respects due to noncompliance with requirements of Ohio Revised Code § 4112.02, *et seq*.; and Ohio Administrative Code §4101:1-11, *et seq.*

50.     Upon further information and belief, the basis of the Named Defendants' actual and constructive notice that the physical configuration of the subject facilities (including, but not limited to, their architectural barriers) was in violation of the civil rights of persons with physical disabilities such as Plaintiffs, includes (but is not limited to) communications with invitees and guests, owners of other establishments and businesses, notices the Named Defendants obtained from governmental agencies and contractors upon modification, improvement, or substantial repair of the subject premises and other properties owned or operated by the Named Defendants, newspaper articles and trade publications regarding the ADA and other access laws, public service announcements, and other similar information.

51.     Defendants' failure under both state and federal law to make the subject facilities accessible is further evidence of the Named Defendants' conscious disregard for the rights of Plaintiffs and other similarly situated persons with disabilities. The scope and means of the knowledge of the Named Defendants are within the Named Defendants' exclusive control and cannot be ascertained except through discovery. Despite being informed of such effect on Plaintiffs and other

persons with physical disabilities due to the lack of accessible facilities, the Named Defendants knowingly and willfully refused to take any steps to rectify the situation and to provide full and equal access for Plaintiffs and other persons with physical disabilities. The Named Defendants have continued such practices, in conscious disregard for the rights of Plaintiffs and other persons with physical disabilities, up to the date of filing of this complaint, and continuing thereon. Said conduct, with knowledge of the effect it was and is having on Plaintiffs and other persons with physical disabilities, constitutes despicable conduct in conscious disregard of the rights and safety of Plaintiffs and of other similarly situated persons, justifying the imposition of punitive damages pursuant to Ohio law.

52.     Plaintiffs intend to patronize the Marc's stores owned or operated by the Named Defendants if, and *only* if, the Named Defendants make them fully accessible to disabled persons in a wheelchair or who relies on the assistance of a walker. Should said stores become accessible, Plaintiffs intend to patronize them in the future because they are conveniently located near their residence and the stores' consumer products are reasonably priced. In addition, Plaintiffs plan to visit additional Marc's stores randomly on an annual basis, commencing in calendar year 2025, to ascertain whether the Named Defendants have removed similar barriers to access which are the subject of this litigation. Finally, when they obtain injunctive relief, or if this matter privately settles, Plaintiffs intend to return to the Marc's stores to ascertain whether Defendants removed barriers to access which are the subject of this litigation.

**CLASS ALLEGATIONS:**

53.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

54.     ***Definition of Class:*** Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action on behalf of themselves, and all persons similarly situated.  The proposed class is defined as:

30

*"All disabled persons qualifying for protection under applicable federal or state law who have patronized a Marc's store at least once between September 22, 2021 and the conclusion of this action".*

55.     The Class shall further consist of one of the following alternative Sub-Classes, as determined in the Court's discretion:

a. ***Unified Sub-Class***—all class members who have patronized a public accommodation owned or operated by the Named Defendants at least once since September 22, 2021;

**OR**

b. ***Segregated Sub-Classes***— all class members who have patronized one of the following public accommodations owned or operated by the Named Defendants at least once since September 22, 2021:

   i. ***Hartville Sub-Class***—all class members who have patronized Marc's Hartville store at least once since September 22, 2021;

   ii. ***Barberton Sub-Class***—all class members who have patronized Marc's Barberton store at least once since September 22, 2021;

   iii. ***Chapel Hill Sub-Class***—all class members who have patronized Marc's Chapel Hill store at least once since September 22, 2021;

   iv. ***Fairlawn Sub-Class***—all class members who have patronized Marc's Fairlawn store at least once since September 22, 2021;

   v. ***Cuyahoga Falls Sub-Class***—all class members who have patronized Marc's Cuyahoga Falls store at least once since September 22, 2021;

   vi. ***Waterloo Sub-Class***—all class members who have patronized Marc's Waterloo store at least once since September 22, 2021;

   vii. ***Stow Sub-Class***—all class members who have patronized Marc's Stow store at least once since September 22, 2021; and

   viii. ***Springfield Sub-Class***—all class members who have patronized Marc's Springfield store at least once since September 22, 2021.

56.     Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or are a parent or subsidiary of, or any entity that is controlled by a Defendant, and any of Defendants' officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns.  Also excluded are those persons who timely and validly request exclusion from any Class or Sub-Class certified for damages under Rule 23(b)(3).

57.     Plaintiffs reserve the right to amend the foregoing Class and Sub-Class definitions if discovery and further investigation reveal the Class or Sub-Classes should be modified.

58.     ***Size of the Class and Numerosity:*** While the exact number of Class Members is presently unknown to Plaintiffs, Class Membership is ascertainable based upon the records maintained by Defendants.  At this time, Plaintiffs, upon information and belief, contend that the Class includes hundreds, if not thousands, of Members. As a result, joinder is impractical.

59.     ***Class Representatives and Adequacy:*** Plaintiffs have and will continue to fairly and adequately protect the interests of putative Class Members and have retained counsel competent and experienced in class actions and ADA law.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class.  Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

60.     ***Typicality:*** Plaintiffs' claims are typical of the claims of the Class Members as all Class Members are similarly affected by the Defendants' respective wrongful conduct in violation of the laws complained of herein.  Defendants have acted on grounds generally applicable to the proposed class, rendering declaratory and injunctive relief appropriate respecting the Class. Certification is therefore proper under Fed. R. Civ. P. 23(b)(2).

61.     ***Common Questions of Fact and Law:*** Common questions of law and fact exists as to all Class Members and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class, and without limitation, are:

   a.   Whether Marc's stores constitute "public accommodations";

   b.   Whether the ADA or applicable Ohio law requires the owner or operator of a public accommodation to conduct (or ensure others conduct) preventive maintenance on its automatic doors by performing AAADM certified inspections annually;

    c.   Whether Marc's maintained a company-wide policy against conducting annual preventive maintenance on its automatic doors throughout the Class Period;

    d.   Whether Defendants conducted (or ensured others conducted) preventive maintenance on the automatic doors providing access to the Marc's store they own or operate by performing AAADM certified inspections annually over the Class Period;

    e.   Whether the Defendants who own real property leased to Marc's for the purpose of operating a public accommodation may be held liable under the ADA or applicable Ohio law for failing to conduct (or to ensure Marc's conducted) annual preventive maintenance on the automatic doors providing access to the store over the Class Period;

    f.   Whether each of the Named Defendants may be held liable under the ADA or applicable Ohio law for failing to remove architectural barriers structural in nature that impede safe access to the Marc's store they own or operate over the Class Period;

    g.   Whether Marc's Hartville store exhibited one or more architectural barriers structural in nature that impede safe access for disabled persons on the day Neal visited;

    h.   Whether Marc's Barberton store exhibited one or more architectural barriers structural in nature that impede safe access for disabled persons on the day Neal visited;

    i.   Whether Marc's Chapel Hill store exhibited one or more architectural barriers structural in nature that impede safe access for disabled persons on the day Neal visited;

    j.   Whether Marc's Fairlawn store exhibited one or more architectural barriers structural in nature that impede safe access for disabled persons on the day Neal visited;

    k.   Whether Marc's Cuyahoga Falls store exhibited one or more architectural barriers structural in nature that impede safe access for disabled persons on the day Neal visited;

    l.   Whether Marc's Waterloo store exhibited one or more architectural barriers structural in nature that impede safe access for disabled persons on the day Neal visited;

m. Whether Marc's Stow store exhibited one or more architectural barriers structural in nature that impede safe access for disabled persons on the day Neal visited;

n. Whether Marc's Springfield store exhibited one or more architectural barriers structural in nature that impede safe access for disabled persons on the day Neal visited;

o. Whether Plaintiffs and Class members have been damaged, and if so, are eligible for and entitled to compensatory and punitive damages;

p. Whether Defendants were agents with each other, operating, acting and otherwise conducting and comporting themselves at the direction, with express or implied consent, for the benefit and in the name of one another, within the terms and limits and to the extent, whether express or implied, of the agency relationship existing between them, to undertake and accomplish the actions complained of herein;

q. Whether Plaintiffs and the putative Class were third-party beneficiaries of contracts between Defendants relating to the preventive maintenance of automatic doors and/or removing structural barriers to safe access to Marc's stores over the Class Period;

r. Whether any Defendant violated 42 U.S.C. §§ 12181 *et seq.*;

s. Whether any Defendant violated 28 C.F.R. § 35.133 or 28 C.F.R. § 36.211;

t. Whether any Defendant violated Ohio Revised Code § 4112.02 *et seq*.;

u. Whether this Court can award class damages pursuant to federal or state laws;

v. Whether this Court can award punitive damages pursuant to federal or state laws.

w. Whether this Court can enter injunctive relief pursuant to federal or state laws.

62.     ***Questions of Law and Fact Common to the Class Predominate Over Individual Issues:*** The claims of the individual class members are more efficiently adjudicated on a class-wide basis.  Any interest that individual members of the class may have in individually controlling the prosecution of separate actions is outweighed by the efficiency of the class action mechanism.  Upon

information and belief, no class action suit is presently filed or pending against Defendants for the relief requested in this action. Issues as to Defendants' conduct in applying standard marketing, sales and administration practices towards all members of the class predominate over questions, if any, unique to members of the class. Certification is therefore additionally proper under Fed. R. Civ. P. 23(b)(3).

63.     ***Superiority of Class Action:*** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class Members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class Members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class Members. There will be no difficulty in the management of this action as a class action. The prosecution of separate actions by class members against Defendants would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct.  Certification is therefore proper under Fed. R. Civ. P. 23(b)(1).

64.     ***Venue:*** This action can be most efficiently prosecuted as a class action in this jurisdiction, where Defendants do business and reside.

65.     ***Class Counsel:*** Named Plaintiffs have retained experienced and competent class counsel.

66.     Defendants are each subject to the claims of Plaintiffs and the putative Class pursuant to the ADA and Ohio laws.

67.     Plaintiffs cannot be certain of the form and manner of a proposed notice to Class

members until the Class is finally defined and discovery is completed regarding the identity of class

members.  Plaintiffs anticipate, however, that notice by mail or email will be given to Class members

who can be identified specifically.  In addition, notice may be published in appropriate publications,

on the Internet, in press releases, and in similar communications in a way that is targeted to reach

class members.  The cost of notice, after class certification, trial, or settlement before trial, should

be borne by Defendants.

**CAUSES OF ACTION:**

## I.    DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §12101, *et seq*.)

68.     Plaintiffs plead and incorporate by reference, as if fully set forth again herein, the

allegations contained in paragraphs 1 through 67 of this complaint.

69.     Pursuant to law, in 1990, the United States Congress made findings per 42 U.S.C.

§12101 regarding persons with physical disabilities, finding that laws were needed to more fully

protect:

> …some 43 million Americans with one or more physical or mental disabilities; [that]
> historically society has tended to isolate and segregate individuals with disabilities;
> [that] such forms of discrimination against individuals with disabilities continue to be
> a serious and pervasive social problem; [that] the nation's proper goals regarding
> individuals with disabilities are to assure equality of opportunity, full participation,
> independent living and economic self-sufficiency for such individuals; [and that] the
> continuing existence of unfair and unnecessary discrimination and prejudice denies
> people with disabilities the opportunity to compete on an equal basis and to pursue
> those opportunities for which our free society is justifiably famous.

70.     Congress stated as its purpose in passing the Americans with Disabilities Act of

1990 (42 U.S.C. §12102):

> It is the purpose of this act (1) to provide a clear and comprehensive national mandate
> for the elimination of discrimination against individuals with disabilities; (2) to
> provide clear, strong, consistent, enforceable standards addressing discrimination
> against individuals with disabilities; (3) to ensure that the Federal government plays

a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and (4) to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities.

71.    As part of the Americans with Disabilities Act of 1990, (hereinafter the "ADA"), Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (Section 301 42 U.S.C. §12181, *et seq*.). Among the public accommodations identified for purposes of this title was:

> (7) **PUBLIC ACCOMMODATION** - The following private entities are considered public accommodations for purposes of this title, if the operations of such entities affect commerce –
>
> **(E)** a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment; 42  U.S.C. §12181(7)(E).

72.    Pursuant to §302, 42 U.S.C. §12182, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation."

73.    The specific prohibitions against discrimination set forth in §302(b)(2)(a), 42 U.S.C. §12182(b)(2)(a) are:

- the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

- a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

- a failure to take such steps as may be necessary to  ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the

37

entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

- a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable; and

- where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

74.     The acts of Defendants set forth herein were a violation of Plaintiffs' rights under the ADA, 42 U.S.C. §§ 12181 *et seq.;* Ohio Revised Code § 4112.02, *et seq*.; and Ohio Administrative Code § 4101:1-11, *et seq.*, making available damage remedies.

75.     The removal of the barriers complained of by Plaintiffs as hereinabove alleged  was at all relevant times "readily achievable" pursuant to 42 U.S.C. §12182 (b)(2)(A)(i)-(iv). On information and belief, if the removal of all barriers complained of herein together was not "readily achievable," the removal of each individual barrier complained of herein was "readily achievable." Upon information and belief, Defendants' failure to remove said barriers was likewise due to discriminatory practices, procedures and eligibility criteria, as defined by §302(b)(2)(a)(i)-(iii); 42 U.S.C. §12182 (b)(2)(A)(i).

76.     Per §301(9), 42 U.S.C. §12181 (9), the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." The statute defines relative "expense" in part in relation to the total financial resources of the entities involved. Plaintiffs allege that properly repairing, modifying, or altering each of the items that Plaintiffs complain of herein were and are "readily achievable" by the Defendants under the standards set forth under §301(9) of the Americans with Disabilities Act. Further, if it was not "readily achievable" for Defendants to remove each of such barriers, Defendants has failed to make the required services available through alternative methods which were readily achievable.

77.     Upon information and belief, construction work on, and modifications of, the Marc's stores complained of herein occurred after the compliance date for the Americans with Disabilities Act, independently triggering access requirements under Title III of the ADA.

78.     Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12188, *et seq*., §308, Plaintiffs are entitled to the remedies and procedures set forth in §204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as Plaintiffs are being subjected to discrimination on the basis of disability in violation of this title or has reasonable grounds for believing that they are about to be subjected to discrimination in violation of §302. Plaintiffs cannot return to or make use of the public facilities complained of herein so long as the premises and Defendants' policies bar full and equal use by persons with physical disabilities.

79.     Per §308(a)(1) (42 U.S.C. 12188), "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions." Pursuant to this last section, Neal has not returned to the Named Defendants' premises since the initial visits stated above, but alleges they have continued to violate the law and deny the rights of Plaintiffs and other persons with physical disabilities to access these public accommodations. Pursuant to §308(a)(2), "In cases of violations of §302(b)(2)(A)(iv) . . . injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title."

80.     Plaintiffs seeks relief pursuant to remedies set forth in §204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to federal regulations adopted to implement the Americans with Disabilities Act of 1990, including but not limited to an order granting injunctive relief and attorneys' fees. Plaintiffs will seek attorneys' fees conditioned upon being deemed to be the prevailing party.

81.     Plaintiffs seek damages pursuant to Ohio Revised Code § 4112.02, *et seq*. and Ohio

39

Administrative Code § 4101:1-11, *et seq.*, which provide, within the statutory scheme, that a violation of the ADA and/or Ohio's accessibility standards is a violation of Ohio law.

## II.    SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF OHIO REVISED CODE § 4112.02, *et seq.*

82.    Plaintiffs replead and incorporate by reference as if fully set forth again herein, the allegations contained in paragraphs 1 through 81 of this complaint.

83.    At all times relevant to this action, Ohio Revised Code § 4112.0254 has provided that persons with physical disabilities are not to be discriminated against because of physical handicap or disability. This section provides that:

> It shall be an unlawful discriminatory practice:
>
> (G)    For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

84.    Marc's stores are "places of public accommodation" pursuant to Ohio Revised Code § 4112.01(A)(9).

85.    The Named Defendants committed unlawful acts pursuant to Ohio Revised Code §4112.02(G) by denying Neal and Class Members full enjoyment of their accommodations, advantages, facilities, or privileges, in that Neal could not patronize their public accommodation without great difficulty due to extensive barriers for disabled patrons.

86.    All Defendants committed unlawful acts pursuant to Ohio Revised Code §4112.02(G) by failing to perform annual certified inspections of their public accommodations' automatic doors throughout the Class Period.

87.    Pursuant to Ohio Revised Code § 4112.99, Plaintiffs are entitled to compensatory and punitive damages, and attorney fees and costs, in an amount to be determined at trial, but in any

event not less than $75,000.00, as well as issuance of an injunction requiring the Named Defendants to allow full and equal enjoyment of its goods, services, facilities, privileges, and advantages to disabled persons.

88.     A separate act in violation of Ohio Revised Code § 4112.02(G) has been committed each day the Named Defendants act or fail to act and/or knowingly and willfully fail and refuse to remove each architectural barrier or policy and procedure barrier presently existing at their public accommodation which denies full and equal access for persons with physical disabilities to said facilities. Neal and the putative Class have been denied full and equal access on an ongoing basis since the date of his first visit. As a legal result, Neal and the putative Class are entitled to seek appropriate relief, such as damages, pursuant to Ohio Revised Code § 4112.99.

89.     On the dates alleged above, Neal and the putative Class suffered violations of Ohio Revised Code §4112.02(G) in that they were denied access to the facilities owned or operated by the Named Defendants on the basis that Neal was a person with physical disabilities.

90.     As a result of the denial of equal access to the Named Defendants' facilities due to their acts and omissions in owning, operating and maintaining said facilities, Neal and the putative Class suffered violations of their civil rights, as well as suffering from personal physical injury, shame, humiliation, embarrassment, frustration, anger, disappointment and worry, all of which are expectedly and naturally associated with a denial of access to a person with physical disabilities, all to Neal and the putative Class' damages as hereinafter stated.

91.     Neal and the putative Class have been damaged by Defendants' wrongful conduct and seek the relief afforded by Ohio Revised Code § 4112 for violation of their rights, including statutory damages according to proof.

92.      As a result of the Named Defendants' acts and omissions in this regard, Plaintiffs have been required to incur legal expenses and to hire attorneys in order to enforce their rights and

to enforce the provisions of the law protecting access for persons with physical disabilities and prohibiting discrimination against persons with physical disabilities. Pursuant to the provisions of Ohio Revised Code § 4112, Plaintiffs therefore will seek recovery in this lawsuit for all reasonable attorneys' fees and costs incurred if deemed the prevailing parties.

III.   **THIRD CAUSE OF ACTION FOR VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT, R.C. 1345, *ET SEQ.***

93.   Plaintiffs replead and incorporate by reference as if fully set forth again herein, the allegations contained in paragraphs 1 through 92 of this complaint.

94.   Plaintiffs are consumers, Defendants are suppliers, and Plaintiffs' (and putative class members') payment and utilization of Marc's stores in this district are consumer transactions as defined by R.C. 1345.01.

95.   Defendants' actions or inactions violate the non-exhaustive list of per se violations set forth in R.C. 1345.02(B)(1)(2)and (4), R.C. 1345.03(B)(1)(3) and (6), and Ohio Administrative Rule 109:4- 3-10, as incorporated into the Consumer Sales Practices Act. Defendants' actions are unfair, deceptive and/or unconscionable.

96.   As a direct and proximate result of Defendants' unfair, deceptive, and unconscionable acts and practices, Plaintiffs have suffered actual economic damages, compensatory, incidental, and consequential damages. Plaintiffs have also suffered noneconomic damages in the form of frustration, anxiety, inconvenience, and other intangible loss. Plaintiffs have incurred costs and attorney fees. Defendants' actions are subject to trebling pursuant to R.C. 1345.09. Because Defendants' actions were volitionally and knowingly committed, said unfair, deceptive, and unconscionable acts and practices are subject to attorney fees pursuant to R.C. 1345.09.

 **PRAYER FOR RELIEF:**

Wherefore, Plaintiffs pray this Court grants the following injunctive relief and damages:

I.  **PRAYER FOR FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A**

**PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §1 2101, et seq.)**

1.    For injunctive relief compelling all Defendants to comply with ADA's requirement to perform preventive maintenance on the Marc's stores owned or operated by Defendants by conducting AAADM certified inspections annually.

2.    For injunctive relief compelling the Named Defendants to make the Marc's stores they own or operate readily accessible to and usable by individuals with disabilities; and to make reasonable modifications in policies, practice, eligibility criteria and procedures so as to afford full access to the goods, services, facilities, privileges, advantages and accommodations being offered;

3.    For attorneys' fees, litigation expenses and costs of suit, if Plaintiffs are deemed the prevailing party;

4.    For such other and further relief as the court may deem proper.

**II.  PRAYER FOR SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF OHIO REVISED CODE § 4112.02, *et seq*.**

5.    For injunctive relief compelling the Named Defendants to make the Marc's stores they own or operate readily accessible to and usable by individuals with disabilities; and to make reasonable modifications in policies, practice, eligibility criteria and procedures so as to afford full access to the goods, services, facilities, privileges, advantages and accommodations being offered accessible to and usable by individuals with disabilities, per state law;

6.    General and compensatory damages according to proof;

7.    All damages for each day, from the inception of the filing of this complaint, on which the Named Defendants have failed to remove barriers which denied Plaintiffs and other persons with disabilities full and equal access;

8.    Attorneys' fees pursuant to Ohio Revised Code § 4112.99, if Plaintiffs are deemed the prevailing party;

43

9.      Punitive damages, pursuant to Ohio Revised Code § 2315.21;

10.     All costs of suit;

11.     Prejudgment interest pursuant to Ohio Revised Code 1343.03(A);

12.      Such other and further relief as the court may deem just and proper.

## III.     PRAYER FOR THIRD CAUSE OF ACTION FOR VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT, R.C. 1345, *ET SEQ.*

13.     For injunctive relief compelling Defendants to stop advertising their stores in unfair, deceptive and/or unconscionable ways;

14.     General and compensatory damages according to proof;

15.     Attorneys' fees pursuant to Ohio Revised Code § 1345.09, if Plaintiffs is deemed the prevailing party

16.     Punitive damages, pursuant to Ohio Revised Code § 2315.21;

17.     All costs of suit;

18.     Prejudgment interest pursuant to Ohio Revised Code 1343.03(A);

19.     Such other and further relief as the court may deem just and proper.

Respectfully submitted,

Blakemore, Meeker & Bowler Co., L.P.A.

/s/ *COLIN G. MEEKER*
COLIN G. MEEKER (Ohio Bar No. 0092980)
495 Portage Lake Drive
Akron, OH 44319
Telephone: (330) 253-3337
Fax: (330) 253-4131
cgm@bmblaw.com

Law Office of George W. Cochran, Esq.

/s/ *GEORGE W. COCHRAN*
GEORGE W. COCHRAN (Ohio Bar No. 0031691)
1981 Crossfield Circle

Kent, Ohio 44240
Telephone: (330) 607-2187
lawchrist@gmail.com

Attorneys for Plaintiffs Spencer Neal and Vivian Oeffner